## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, | ) |
| Plaintiff, | ) Case No. |
| v. | ) **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| LYDALL, INC., DAVID G. BILLS, JAMES J. CANNON, MARC T. GILES, PAUL W. GRAVES, SARA A. GREENSTEIN, SUZANNE HAMMETT, and KATHERINE C. HARPER, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Michael Kent ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action against Lydall, Inc. ("Lydall" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Unifrax Holding Co. ("Unifrax") through Unifrax's subsidiary Outback Merger Sub, Inc. (the "Proposed Transaction").

2. On June 21, 2021, Lydall and Unifrax entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each Lydall stockholder will receive $62.10 in cash for each share of Lydall common stock they own.

3. On August 10, 2021, Lydall filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the Company's financial projections and the financial analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA"); and (ii) Company insiders' potential conflicts of interest. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Lydall.

9. Defendant Lydall is a Delaware corporation with its principal executive offices located at One Colonial Road, Manchester, Connecticut 06042 and a Product Manufacturing facility located in Novi, Michigan. Lydall's common stock trades on the New York Stock Exchange under the ticker symbol "LDL."

10. Defendant David G. Bills has served as a director of the Company since 2018.

11. Defendant James J. Cannon has served as a director of the Company since 2017.

12. Defendant Marc T. Giles has served as Chairman of the Board since 2017 and as a director of the Company since 2008.

13. Defendant Paul W. Graves has served as a director of the Company since April 2021.

14. Defendant Sara A. Greenstein has served as President and Chief Executive Officer ("CEO") of the Company since November 2019, and as a director of the Company since 2019.

15. Defendant Suzanne Hammett has served as a director of the Company since 2000.

16. Defendant Katherine C. Harper has served as a director of the Company since April 2021.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

18. Relevant non-party Unifrax is a leading global supplier of high-performance specialty materials used in thermal management, specialty filtration, battery materials, emission control and fire protection applications. Unifrax is headquartered in Tonawanda, New York and is backed by Clearlake Capital Group, L.P. ("Clearlake").

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

19. Lydall and its subsidiaries design, manufacture, and market specialty filtration and advanced materials solutions. Lydall operates in a variety of attractive end markets supported by global megatrends such as the demand for indoor air quality and lower emissions, near sourcing of supply chains, and vehicle electrification redefining safety and sound. Lydall's applications include, high performance air and liquid specialty filtration, molecular filtration, engineered fiber based materials and sealing solutions, specialty insulation including high temperature and ultra-low temperature (cryogenic) insulation, needle punch nonwoven materials for industrial, geosynthetic, medical and other specialty applications. Lydall also offers thermal management and acoustical products and solutions to assist in the reduction of noise, vibration, and harshness.

20. The Company is organized into three reportable segments: Performance Materials, Technical Nonwovens, and Thermal Acoustical Solutions. The Performance Materials and Technical Nonwovens segments' products are generally sold to original equipment manufacturers ("OEMs"), Tier 1, Tier 2, and Tier 3 industrial customers while the Thermal Acoustical Solutions segment's products are sold to OEMs and Tier 1 suppliers in the automotive industry.

21. On June 21, 2021, Lydall and Unifrax issued a joint press release announcing the Proposed Transaction which states, in relevant part:

> TONAWANDA, N.Y. and MANCHESTER, Conn., June 21, 2021 -- Unifrax, a leading global provider of high-performance specialty materials focused on thermal management, specialty filtration, battery materials, emission control and fire protection applications backed by Clearlake Capital Group, L.P. ("Clearlake"), today announced it has signed definitive agreements to acquire Lydall, Inc. (NYSE: LDL, "Lydall" or the "Company"), a leader in the design and production of specialty filtration materials and advanced material solutions. With its leading technologies and 23 manufacturing facilities around the world, Lydall is well positioned to capitalize on growth in clean air filtration and electric vehicle adoption, among many other attractive markets. Under the terms of the agreement, Lydall shareholders will receive $62.10 per share in cash for each share outstanding, implying a total enterprise value of approximately $1.3 billion.
>
> "The combination of Unifrax and Lydall creates a global specialty materials platform with new cutting edge technologies in advanced filtration, electric vehicle battery systems, and energy saving applications," said John Dandolph, President and CEO of Unifrax. "The addition of Lydall's people, technologies, and assets to the Unifrax portfolio will help accelerate our innovation pipeline and creates a world class platform capable of solving the world's most pressing energy consumption, environmental and filtration challenges. We are excited to partner with a company that is similarly focused on our commitment to a Greener, Cleaner, and Safer® world."
>
> Sara Greenstein, President and CEO of Lydall, added, "We are excited about the combination of Lydall and Unifrax. With this transaction, we are creating a leader in specialty filtration and advanced materials with over 250 years of combined expertise and experience delivering innovative and compelling solutions to customers worldwide."
>
> "We have long admired Lydall and what it would bring to our platform investment in Unifrax, and could not be more excited about partnering with the Company and its team to build one of the world's leading global specialty materials platforms," said José E. Feliciano, Co-Founder and Managing Partner at Clearlake, and Colin Leonard, Partner at Clearlake, in a joint statement. "We have supported Unifrax's development of new technologies over the last few years that have the potential to change how we think about the industries in which both Unifrax and Lydall operate and inform their futures. The addition of Lydall to the Unifrax portfolio and its strong capabilities in advanced filtration creates a global platform with significant scale that together can accelerate each company's respective compelling growth plans."

BofA & Co. LLC acted as lead financial advisor, J.P. Morgan acted as financial advisor, and Kirkland & Ellis acted as legal counsel to Unifrax in the transaction. BofA Securities is acting as exclusive financial advisor, and Davis Polk & Wardwell LLP is acting as legal counsel to Lydall in connection with the transaction.

**The Proxy Misleads Lydall Stockholders by Omitting Material Information**

22. On August 10, 2021, Lydall filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Lydall's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) the Company's financial projections and the financial analyses performed by the Company's financial advisor, BofA; and (ii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections and BofA's Financial Analyses*

23. The Proxy omits material information regarding the Company's financial projections.

24. With respect to each of the "Strategic Plan Case" and "Aspirational Case," the Proxy fails to disclose all line items underlying the calculation of (i) Adjusted EBITDA; and (ii) with respect to the "Strategic Plan Case," unlevered free cash flow.

25. Additionally, the Proxy fails to disclose Lydall management's assumptions underlying the "Aspirational Case" projections.

26. The Proxy also fails to disclose material information concerning BofA's financial analyses.

27. The Proxy describes BofA's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of BofA's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Lydall's public stockholders are unable to fully understand these

analyses and, thus, are unable to determine what weight, if any, to place on BofA's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

28. With respect to BofA's *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

29. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose: (i) the individual multiples and financial metrics for each of the transactions analyzed; and (ii) Lydall's LTM estimated Adjusted EBITDA.

30. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) Lydall's fiscal year 2025 estimated EBITDA used to derive the terminal value; (ii) the terminal values of the Company; and (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%.

31. With respect to BofA's analysis of stock price targets for Lydall, the Proxy fails to disclose the individual price targets observed and the sources thereof.

32. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Projected Financial Information" and "Opinion of Lydall's Financial Advisor."

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

33. The Proxy omits material information regarding potential conflicts of interest faced by Company insiders.

34. For example, in the June 21, 2021 press release announcing the Proposed Transaction, Unifrax President and CEO John Dandolph states, "***The addition of Lydall's people***, technologies, and assets to the Unifrax portfolio will help accelerate our innovation pipeline and creates a world class platform capable of solving the world's most pressing energy consumption,

environmental and filtration challenges." Emphasis added.  Similarly, representatives of Clearlake were quoted as stating, "We have long admired Lydall and what it would bring to our platform investment in Unifrax, and *could not be more excited about partnering with the Company **and its team*** to build one of the world's leading global specialty materials platforms."  Emphasis added.  The Proxy, however, fails to disclose whether any of Lydall's executive officers are continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Unifrax, Clearlake and Lydall's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy further fails to disclose whether any of Unifrax's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction.

35.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders.  This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Merger" and "Interests of Lydall's Directors and Executive Officers in the Merger."

37.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

38. Plaintiff repeats all previous allegations as if set forth in full.

39. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, BofA's financial analyses and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

43. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. The Individual Defendants acted as controlling persons of Lydall within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Lydall, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Lydall's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Lydall, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 30, 2021

By **LONG LAW, LLC**

OF COUNSEL:

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*/s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Tel: (302) 729-9100
Email: bdlong@longlawde.com

*Attorneys for Plaintiff*